Voto particular disidente emitido por el
Juez Asociado Señor Rivera García, al que se une la Jueza Asociada Señora Pabón Charneco.
Luego de evaluar las comparecencias de las partes, así como el expediente del caso en su totalidad, disiento de la Resolución que antecede. En su lugar, expediría el recurso de certiorari para dirimir cómo se deben atender las denuncias relacionadas con un aparente fraude que se presenten en torno a un licitador a quien una agencia gubernamental le adjudicó una subasta. A continuación, expondré un breve recuento de los procedimientos acaecidos en este caso.
La Autoridad de Carreteras y Transportación (ACT) adjudicó el 3 de febrero de 2015 la subasta número P-15-07 a favor de R & F Asphalt Unlimited Inc. (R & F). Inconforme con esta adjudicación, Betterecycling Corp. (Betterecycling) —quien también participó como licitador en ese procedimiento— presentó ante la agencia un escrito titulado Moción de Reconsideración.(1) A pesar de que Betterecycling presentó esa moción dentro de un proceso para impugnar la adjudicación de la subasta, los remedios que solicitó pueden agruparse en dos categorías. Veamos.
*814 Por un lado, Betterecycling argumentó que la subasta tenía que anularse porque, a su juicio, R & F no era un licitador hábil, ya que había presentado ante la Administración de Servicios Generales (ASG) unas declaraciones juradas presuntamente falsas en contravención al Art. 7 de la Ley Núm. 458-2000 (3 LPRA sec. 928f). Este estatuto exige a toda persona natural o jurídica que interese participar como licitador en subastas públicas que notifique si ha sido objeto de investigaciones criminales, civiles o administrativas en cualquier país. En su parte pertinente, este artículo preceptúa:
[...] toda persona natural o jurídica que desee participar de la adjudicación de una subasta o en el otorgamiento de contrato alguno, con cualquier agencia o instrumentalidad gubernamental, corporación pública, municipio, o con la Rama Legislativa o la Rama Judicial, para la realización de servicios o la venta o entrega de bienes, someterá una declaración jurada ante notario público, en la que informará si la persona natural o jurídica, o cualquier presidente, vic[ep]presidente, director, director ejecutivo, o miembro de una Junta de Oficiales o Junta de Directores, o persona que desempeña funciones equivalentes para la persona jurídica, ha sido convicta o se ha declarado culpable de cualquiera de los delitos enumerados en la sec. 928b de este título, o si se encuentra bajo investigación en cualquier procedimiento legislativo, judicial o administrativo, ya sea en Puerto Rico, Estados Unidos de América o cualquier otro país, para poder participar en la adjudicación u otorgamiento de cualquier subasta o contrato, respectivamente. Si la información fuere en la afirmativa, deberá especificar los delitos por los cuales fue hallado culpable o si hizo la correspondiente alegación de culpabilidad. 3 LPRA sec. 928f.
Amparándose en esa disposición, Betterecycling sostuvo que la ACT debía anular la subasta y que procedía eliminar a R & F y a sus compañías afiliadas del Registro Unico de Licitadores (RUL), de manera que quedaran inhabilitados de realizar negocios con el Gobierno de Puerto Rico. Cabe mencionar que el RUL es el registro electrónico que contiene los nombres, las direcciones y toda la información requerida por ley sobre las personas naturales o jurídicas *815 cualificadas por la ASG para contratar con el Gobierno de Puerto Rico. 3 LPRA Ap. XIX Art. 4(t). Fue mediante el Plan de Reorganización de la Administración de Servicios Generales (ASG) de 2011 que se le delegó a dicha agencia el deber de administrar el RUL. 3 LPRA Ap. XIX Art. 39. Además, conforme al Reglamento Núm. 8182, Reglamento del Registro Único de Licitadores del Gobierno de Puerto Rico, de 20 de abril de 2012, promulgado por la ASG, es ante esta dependencia que los potenciales licitadores deben presentar toda la documentación necesaria para pertenecer al RUL y, como consecuencia, poder licitar con el gobierno.(2) Como vemos, estas contenciones iban dirigidas a impugnar la subasta ante el aparente incumplimiento de R & F con uno de los requisitos que exige la ley para que se pueda contratar con el gobierno.
Ahora bien, Betterecycling también planteó que estaba denunciando la situación presuntamente fraudulenta en virtud de las disposiciones del Art. 5(h) del Código de Ética *816 para Contratistas, Suplidores y Solicitantes de Incentivos Económicos de las Agencias Ejecutivas del Estado Libre Asociado de Puerto Rico (Código de Etica), 3 LPRA sec. 1756(h).(3) Ese precepto establece que toda persona está obligada a denunciar los actos que violen el Código de Etica, y que constituyan corrupción o delitos de fraude, de los que tenga propio y personal conocimiento y que se relacionen con algún negocio, contrato o transacción entre el gobierno y un contratista. Añadió la aquí peticionaria que, según el Art. 7 de esa legislación, 3 LPRA see. 1758, la ACT tenía el deber de investigar ese asunto. Sobre esto, Beterecycling peticionó en su Moción de Reconsideración, entre otras cosas, que la ACT: (1) investigara la situación denunciada y (2) que rescindiera toda contratación vigente con dichas empresas, según establecido en el Código de Etica.(4)
Surge del expediente que la ACT no tomó determinación alguna respecto a esta moción que presentó Betterrecycling. Ante ello, esta compañía acudió al Tribunal de Apelaciones mediante un recurso de revisión judicial que presentó el 23 de febrero de 2015.(5) Entre otras cosas, señaló que la ACT había errado al procurar la compra de bienes con una empresa que violó el Código de Etica y al negarse a investigar las denuncias que Betterecycling formuló ante la agencia respecto a esas presuntas violaciones. Ante ello, solicitó que se le ordenara a la ACT anular la subasta y cumplir con su deber ministerial de investigar tales denuncias.
Poco tiempo después, el 26 de marzo de 2015, el foro apelativo intermedio emitió la sentencia objeto de este recurso, en la que confirmó la adjudicación de la subasta de la ACT. Concluyó que ese no era el foro, el momento ni el recurso apropiado para dilucidar las alegaciones que Betterecycling presentó contra R & F. Esto en cuanto a que no le correspondía dirimir si procedía que se anulara la su *817 basta por el hecho de que R & F hubiera suscrito declaraciones juradas presuntamente falsas ante la ASG. En específico, resolvió que le competía a la ASG y no al Tribunal Apelativo (dentro de ese proceso de impugnación de subasta) resolver si R & F debía permanecer en el RUL como licitador. Sin embargo, nada dispuso en torno al resto de las alegaciones de Betterecycling relativas a que la ACT tenía el deber, conforme al Código de Etica, de investigar las aparentes violaciones éticas en las que incurrió R & F.
En el contexto de estos eventos procesales, el 27 de abril de 2015 Betterecycling presentó ante esta Curia un auto de certiorari y, posteriormente, una moción en auxilio de jurisdicción. Señaló que el Tribunal de Apelaciones erró al determinar que no tenía jurisdicción “para entender en un proceso de impugnación de subasta que concierne exclusivamente el planteamiento que el licitador agraciado no es un licitador hábil o responsable”.(6) Uno de sus argumentos es que el foro apelativo intermedio incidió al entender que la ASG es la única entidad autorizada a atender planteamientos relacionados con violaciones a la Ley Núm. 458, supra, y al Código de Etica. Tras estudiar las referidas peticiones, emitimos una Resolución el 1 de junio de 2015 en la que le ordenamos a R & F y a la ACT que mostraran causa por la cual no debíamos expedir el auto de certiorari para revocar al foro apelativo intermedio. Así también, ordenamos paralizar los procedimientos y toda gestión de compra relacionada con la subasta objeto de este recurso. En cumplimiento con nuestra orden, las partes comparecieron a expresar sus respectivas posturas.
La ACT compareció el 22 de junio de 2015 e informó que estaba en proceso de anular la subasta una vez contaran con la anuencia expresa de la Administración Federal de Autopistas (AFA).(7) Consiguientemente, el 15 de julio de 2015 *818 acudió ante nos nuevamente mediante una Moción informativa y en solicitud de desestimación y archivo del caso por académico. En su escrito indicó que la ACT había anulado la subasta en controversia porque la AFA determinó que R & F y su presidente, el Sr. Raúl Robles, eran preliminarmente inelegibles para contratar con agencias federales por desplegar falta de honestidad en sus negocios. En vista de que ya se había anulado la subasta, solicitó que se archivara el caso por ser académico. Así también, R & F presentó su Moción mostrando causa y en oposición a la petición de certiorari. Expuso, en parte, que como el Tribunal de Apelaciones ya estaba evaluando en los méritos un recurso relacionado con la descalificación de la compañía Robles Asphalt del RUL, expedir el caso resultaría en triplicar los procedimientos para un mismo asunto.(8)
Luego de examinar las posturas y contenciones de las partes, es mi criterio que independientemente de que la ACT decidiera anular la subasta que dio origen a este recurso, aún persisten controversias vivas en este caso que no dependen directa ni indirectamente de la vigencia de dicha subasta y que, por lo tanto, ameritan nuestra atención y consideración.
De primera intención, al examinar los escritos que Betterecycling presentó ante la ACT, el Tribunal de Apelaciones y este Tribunal, podría surgir que este caso trata simple y llanamente de un proceso de impugnación de subasta. En ese escenario, sería bastante evidente arribar a la conclusión de que, debido a la anulación de la subasta, el cer *819 tiorari se habría tornado académico. Así lo concluye en su voto de conformidad la Jueza Asociada Señora Oronoz Rodríguez, quien entiende que todas las controversias de este recurso murieron con la cancelación de la referida subasta. Ahora bien, tal conclusión hubiese sido correcta si todos los remedios solicitados por Betterecycling estuvieran directamente relacionados con la adjudicación de la subasta, lo cual evidentemente no es así. Veamos esto en detalle.
Dentro del proceso de impugnación de subasta, Betterecycling también solicitó que la ACT investigara posibles actuaciones fraudulentas de una corporación con quien estaba contratando y exigió que esa agencia cumpliera con ciertos deberes que le impone el Código de Etica cuando se presentan esos tipos de denuncias. Esas controversias, las cuales estaban inmersas dentro de un proceso de impugnación de subasta, no dejaron de existir por el hecho de que se anulara la subasta adjudicada a favor de R & F. Por lo tanto, el hecho de que la ACT procediera de esa manera no debió operar como impedimento para que este Tribunal ex-pidiera el recurso.
Por otro lado, sabemos que la expedición de un auto de certiorari es un ejercicio enteramente discrecional. Empero, tal y como recalqué recientemente en el Voto particular disidente que emití en Pueblo v. Serrano Chang, 193 DPR 531 (2015), esa discreción no opera en un vacío. Máxime, cuando la norma que se debe atender o pautar es importante para el interés público. Como es de conocimiento, los procedimientos de contratación con el gobierno se llevan a cabo con mucha frecuencia en las distintas agencias gubernamentales mediante subastas. Debido a que ello conlleva el desembolso de fondos públicos, estos procedimientos están revestidos de un gran interés público. Costa Azul v. Comisión, 170 DPR 847, 854 (2007). Es por eso que “la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas, debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico”. *820 (Énfasis nuestro). Cordero Vélez v. Mun. de Guánica, 170 DPR 237, 245 (2007).
En cuanto al recurso de título, la procedencia o improcedencia de lo que Betterecycling solicitó ante la ACT, así como la idoneidad del mecanismo procesal que utilizó para ello, eran asuntos altamente importantes sobre los cuales esta Curia debió expresarse. Este Tribunal tenía ante sí la oportunidad de evaluar la responsabilidad de cada agencia administrativa dentro de los procedimientos de adjudicaciones de subastas a la luz de la nueva legislación que estableció que la ASG sería la entidad encargada de administrar el RUL. Todo esto, en unión a las responsabilidades que impone el Código de Ética. En vista del interés público que reviste todo lo relacionado con la contratación y compra de bienes y servicios con fondos públicos, era ineludible que este Tribunal se expresara sobre cómo proceder ante alegaciones relativas a que la persona natural o jurídica con quien habrá de contratar el gobierno ha incurrido en actuaciones presuntamente fraudulentas.(9)
En resumen, es mi criterio que el hecho de que la ACT anuló la subasta no afectó la jurisdicción de este Tribunal para atender el resto de las controversias inmersas en re *821 curso de título, según he discutido. Por ello, y debido al alto interés público que reviste a este caso, me veo obligado a disentir de la Resolución que hoy emite este Tribunal, en la que deniega la expedición del certiorari peticionado. En consideración a ello, expediría el recurso para pautar la norma que debe aplicar a situaciones como las acontecidas en este caso.

 Apéndice del Certiorari, pág. 25.

 El 25 de febrero de 2015, dentro de otro proceso que se llevó a cabo ante la Administración de Servicios Generales, la compañía Robles Asphalt, quien presuntamente está afiliada a R & F, fue eliminada del Registro Unico de Licitadores (RUL). Según surge del expediente, para noviembre de 2014 otra compañía denominada Betteroads Asphalt Inc. presentó ante esa dependencia una solicitud para que Robles Asphalt y todas las corporaciones relacionadas a esta —entre las cuales se encontraba R & F— se eliminaran del referido registro. En esa Resolución de 25 de febrero la agencia consignó que Robles Asphalt declaró bajo juramento que no estaba siendo investigada en alguno de los foros que señala el Art. 7 de la Ley Núm. 458-2000 (3 LPRA sec. 928(f)), a pesar de que conocía que tanto esa compañía como R & F y uno de sus oficiales sí fueron objeto de investigaciones. Véase Resolución en reconsideración, Anejos de la Moción solicitando que se tome conocimiento judicial, pág. 95, Caso Núm. CC-2015-0329, Pieza 1. En específico, la agencia expresó lo siguiente:
“De un examen de este licitador ante el RUL se desprende que tanto el 31 de julio de 2014 como el 27 de febrero de 2015 Robles Asphalt presentó declaraciones juradas en la[s] que negó que la compañía o alguno de sus oficiales estuvieren bajo investigación en cualquier procedimiento legislativo, judicial o administrativo, ya sea en Puerto Rico, Estados Unidos de América o cualquier otro país. No obstante, el hecho de que el 18 de marzo de 2015 R & F, empresa subsidiaria de Robles Asphalt y el Secretario de R & F Juan Raúl Robles Rivera, quien también es oficial de Robles Asphalt, suscribieran un Acuerdo de Transacción con la Fiscalía Federal, sólo 19 días después de que Robles Asphalt presentara su declaración jurada ante nos donde no informó si se encontraba bajo investigación en alguno de los foros que detalla el Art. 7 de la Ley 458, supra, nos mueve a concluir que tanto al emitir la declaración jurada del 31 de julio de 2014 como la del 27 de febrero de 2015, Robles Asphalt tenía conocimiento de que estaba siendo investigado, pero intencionalmente dejó de informarlo bajo juramento”. Id., págs. 106-107.

 Ley Núm. 84-2002 (3 LPRA see. 1755 et seq.).

 Véase Moción de reconsideración, Apéndice del Certiorari, pág. 33.

 Véase Solicitud de revisión, Id., pág. 1.

 Certiorari, pág. 11.

 Este consentimiento era necesario, ya que los trabajos se financiarían con dinero proveniente del gobierno federal.

 Así también presentó una Urgente moción en solicitud de orden para mostrar causa requiriendo que le ordenáramos a la Autoridad de Carreteras y Transportación (ACT) mostrar causa por la cual no se le debía encontrar incursa en desacato por dejar sin efecto la subasta, aun cuando emitimos una orden de paralizar los procedimientos y toda gestión de compra relacionada con esta. En cuanto a este asunto, la ACT presentó un escrito titulado “Oposición a Urgente moción en solicitud de orden para mostrar causa”. Planteó que la ACT anuló la subasta conforme a las disposiciones del Reglamento de Subastas de la ACT, que le permite hacerlo antes de que se perfeccione el contrato correspondiente. Ante dichas alegaciones, R & F presentó un escrito de réplica aduciendo que, presuntamente, el contrato entre esa compañía y la ACT sí se formalizó.

 La Jueza Asociada Señora Oronoz Rodríguez expone en su Voto de conformidad que los argumentos presentados en este caso están faltos de prueba que apunte a que esta controversia ocurre con frecuencia. Esto, como parte de su análisis para concluir que este caso se tornó académico. Como ya mencioné, mi contención es que este recurso contiene controversias vivas que no dependen de la subasta que se adjudicó, sino que más bien se circunscriben a analizar el deber que tenía la ACT de atender ciertos planteamientos a la luz de las disposiciones del Código de Ética para Contratistas, Suplidores y Solicitantes de Incentivos Económicos de las Agencias Ejecutivas del Estado Libre Asociado de Puerto Rico. Por lo tanto, entiendo innecesario entrar a considerar argumentos que sostengan la posible aplicación de alguna de las excepciones a la doctrina de academicidad. Sin embargo, aprovecho la coyuntura para destacar que el interés público que reviste esta controversia es evidente. Tan reciente como el pasado 23 de junio de 2015 se presentó ante este Tribunal el recurso de certiorari CC-15-0527, Betteroads Alphalt LLC v. Departamento de Transportación y Obras Públicas y otros, en el que precisamente se plantea que una agencia gubernamental erró al negarse a atender ciertos reclamos relativos a que un licitador agraciado había cometido fraude al mentir en la certificación que presentó ante el RUL. Al igual como ocurrió en el recurso de título, el Tribunal de Apelaciones resolvió mediante sentencia que el Departamento de Transportación y Obras Públicas de Puerto Rico, agencia que había adjudicado la subasta, no tenía jurisdicción para pasar juicio sobre ese tipo de alegaciones.